<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                :

RICHARD DESCISCIO,             :

                    :

          Petitioner,          :

                    :           Civil Action No. 08-0229 (JAG)

              v.                :

                    :           **OPINION**

UNITED STATES OF AMERICA,     :

                    :

          Respondent.      :

_____ :

<u>**GREENAWAY, JR., U.S.D.J.**</u>

        This matter comes before this Court on the motion filed by petitioner, Richard DeSciscio ("Petitioner"), pursuant to Fed. R. Civ. P. 60(b), seeking to reconsider the denial of Petitioner's Motion to Vacate Conviction, under 28 U.S.C. § 2255 ("Section 2255"),[1] and/or reconsider Petitioner's sentencing.[2] Petitioner asserts that his right to Due Process under the Fifth

_____

[1] A Section 2255 petition allows:

> [a] prisoner in custody under sentence of a court established by Act of Congress [to] claim[] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [and to] move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[2] Petitioner was tried and convicted before Judge Maryanne Trump Barry in 1989. She sentenced him on September 26, 1989. Judge Barry denied Petitioner's Section 2255 motion on September 9, 1997.

Amendment to the Constitution was violated through ex-parte communications with the judge who sentenced him and ruled on his Section 2255 petition following his conviction.  For the reasons set forth below, the motion is denied.

## I. FACTS

On August 25, 1989 – approximately twenty years ago – a jury convicted Petitioner of racketeering, three counts of conspiracy to murder in aid of racketeering, murder, and conducting an illegal gambling operation.  The convictions for conspiracy to murder in aid of racketeering involved the planned murders of John Gotti and Gene Gotti, and the murder of Irwin Schiff in August 1987.  Petitioner was tried with codefendant, Louis Anthony Manna ("Manna"), for these crimes related to the Genovese Family's organized criminal activities.  United States v. Manna, No. 97-2034, 2006 WL 3063456 at *1 (D.N.J. Oct. 25, 2006).  Former District Judge Maryanne Trump Barry ("Judge Barry") sentenced Petitioner to seventy-five years imprisonment on September 26, 1989.

The Court of Appeals affirmed Petitioner's conviction on November 21, 1990.  DeSciscio v. United States, 919 F.2d 733 (3d Cir. 1990).  The Supreme Court of the United States denied Petitioner's petition for certiorari on April 15, 1991.  DeSciscio v. United States, 499 U.S. 962 (1991).

Petitioner eventually filed a motion to vacate his conviction, pursuant to Section 2255, on April 30, 1997.  DeSciscio v. United States, No. 97-2285 (D.N.J. Sept. 9, 1997).  Judge Barry denied this motion, as untimely, on September 9, 1997, after finding no grounds for invoking the equitable tolling doctrine to excuse Petitioner's late filing of the motion.  Id.

Petitioner filed two motions seeking leave from the Third Circuit to file a second or

2

successive Section 2255 motion.  The first of these motions was filed on April 21, 2003 and

denied on June 20, 2003.  <u>DeSciscio v. United States</u>, No. 03-2129 (3d Cir. June 20, 2003).

Petitioner's second motion was filed on May 7, 2007.  This motion sought to adopt the

"principles articulated in the In re Louis Anthony Manna application presently before the court."

(Mot. pursuant to 28 U.S.C. § 2244 at 2, attached as Ex. C to Resp't's Answer.)

       Manna's case, then before the Third Circuit, was an appeal of Judge Dickinson R.

Debevoise's decision dated, October 20, 2006, denying Manna's Motion to Vacate Judgment,

pursuant to Rule 60(b).  <u>Manna</u>, 2006 WL 3063456 at *10.  In the opinion, Judge Debevoise

outlined Manna's discovery of FBI documents through several Freedom of Information Act

requests.  <u>Id.</u> at *5.  The documents, though heavily redacted, represent official correspondence

between several FBI field offices and the Director of the FBI ("FBI Memos").  <u>Id.</u>; (FBI Memos

attached to Pet'r's Mot. for Relief from J. as Ex. A, B. [hereinafter "Pet'r's Mot. Ex. A" and

"Pet'r's Mot. Ex. B"].)

       The FBI Memos discuss an investigation into a potential plot to murder individuals

involved in Manna's and Petitioner's trial and convictions.  (Pet'r's Mot. Ex. B.)  The

investigation sought to discover the veracity of an alleged plot by Manna, and possibly other

inmates, to murder former United States District Judge Maryanne Trump Barry, former United

States Attorney Samuel Alito, and former Assistant United States Attorney Michael Chertoff.

<u>Manna</u>, 2006 WL 3063456 at *6.

       Petitioner alleges that the FBI Memos demonstrate that the FBI believed Petitioner was

among the group of conspirators, and further, that the Government informed Judge Barry, after

his conviction but before his sentencing, both of the existence of the murder plot and of

Petitioner's alleged involvement therein.  (Pet'r's Mot. ¶ 12.)  Petitioner offers his twice-filed copies of the above-mentioned FBI Memos to support this allegation. (Pet'r's Mot. ¶ 12; Pet'r's Mot. Ex. A.)  Petitioner alleges he was unaware of both the murder plot and the fact that information regarding the plot was given to Judge Barry.  (Pet'r's Mot. ¶¶ 11, 12.)  Petitioner claims that he first discovered this information on January 2, 2008.  (Pet'r's Mot. ¶ 12.)

The FBI Memos focus on Manna as the source of the alleged threats.  In one FBI memo, the Case Agent wrote that "Manna's reputation and evidence presented at his trial indicate that he is more than capable of ordering the execution of others."  (Pet'r's Mot. Ex. B. p. 37.)  The FBI believed that Manna had once led "a particularly violent faction of the Genovese" Family and that his "incarceration should not be viewed as a barrier to any control he may have over other Genovese members or associates."  (Pet'r's Mot. Ex. B. p. 38.)  Although, in forty pages provided by Petitioner, the FBI Memos contain several instances of the name "DeSciscio," nowhere is Petitioner's name attached explicitly, or implicitly, to the murder plot.  After an extensive discussion of Manna, the memo indicates that the government would review Petitioner's telephone records, recordings, visitor's lists, and correspondence records.  (Id. at 38.)

The memo later states: "Newark [FBI] has made appropriate notifications to USMS, Newark, captioned victims, and Chief USDC Judge Newark."  (Id.)  The FBI Memos do not indicate what constitutes an "appropriate notification."  (Id.; Pet'r's Mot. Ex. A.)

On January 11, 2008, Petitioner filed a pro se Motion for Relief, pursuant to FED. R. CIV. P. 60(b), to reconsider the denial of Petitioner's Motion to Vacate Conviction, pursuant to Section 2255, and/or reconsider Petitioner's sentencing.  On February 4, 2009, the Government answered.

## II. D<small>ISCUSSION</small>

Petitioner seeks a hearing to consider his claims, under Rules 60(b)(3) and 60(b)(6), that he was denied due process, both during his sentencing and when his 1997 petition to vacate his sentence, pursuant to Section 2255, was dismissed.

F<small>ED</small>. R. C<small>IV</small>. P. 60(b) provides in part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party. . . or,
> (6) any other reason that justifies relief.

F<small>ED</small>. R. C<small>IV</small>. P. 60(b).  Where "the factual predicate of a petitioner's Rule 60(b) motion attacks the manner in which the earlier Section 2255 judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits." Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004).  "However, when the Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion should be treated as a successive habeas petition." Id.

To the extent Petitioner challenges the procedures of both his sentencing and his Section 2255 proceedings, this Court shall interpret this motion under Rule 60(b).

This Court need not review any direct challenges to the legitimacy of Petitioner's conviction or sentencing as the Third Circuit has not granted him leave to file a second or successive Section 2255 petition.  See In re Olabode, 325 F.3d 166, 169 (3d Cir. 2003).

**A. Timeliness**

"A motion for relief under Rule 60(b) is directed to the sound discretion of the trial court." Pierce Assoc., Inc. v. Nemours Foundation, 865 F.2d 530, 548 (3d Cir. 1988).  However,

Rule 60(b) limits the time within which the motion must be filed.  Generally, a movant must file within a "reasonable time" from the date of the decision to be vacated.  However, a motion for reason three (3) of Rule 60(b) may be filed "no more than a year after the entry of the judgment or order or the date of the proceeding."  FED. R. CIV. P. 60(b).  A "reasonable time" to move to vacate a judgment under Rule 60(b) is based on the circumstances of the individual case. Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3d Cir. 1959).  For example, where the information regarding the grounds for the motion was available for "almost two years" prior to the filing of the Rule 60(b) motion, the motion was not timely filed.  Moolenaar  v. Government of Virgin Islands, 822 F.2d 1342, 1348 (3d Cir. 1987); see also Kamara v. Attorney General of U.S., 206 F. App'x 189, 191 (3d Cir. 2006) (holding 20 month delay not within a "reasonable time").

Under certain circumstances, the principles of equitable tolling will allow the court to extend these limitations, but the doctrine does not extend to "garden variety claim[s] of excusable neglect."  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).  Here, Petitioner does not argue excusable neglect; thus, he is entitled to no equitable tolling.

This Court finds that Petitioner's Rule 60(b) motion is filed untimely.  In the instant case, Petitioner filed his Rule 60(b) motion nearly twenty years after his sentencing and twelve years following the denial of his Section 2255 petition.  In an apparent effort to circumvent the untimeliness of this motion, Petitioner claims he did not discover the evidence regarding the alleged ex-parte communications between the FBI and Judge Barry until January 2, 2008. (Pet'r's Mot. ¶ 12.)  This claim is not supported by the record.

In May 2007, Petitioner sought leave from the Third Circuit to file a second Section 2255 petition.  In that motion, Petitioner incorporated the arguments raised in Manna's pleadings

6

before Judge Debevoise regarding similar Rule 60(b) claims.  Judge Debevoise's decision,[3] dated October 25, 2006, which denied Manna's Rule 60(b) motion, outlined Manna's allegations of ex-parte governmental communications with Judge Barry, and extensively quoted the FBI Memos. These allegations, which are based on the same facts as Petitioner's current claims, are largely identical to those raised by Petitioner's current argument.  This information leads this Court to conclude that Petitioner knew of the information contained within the FBI Memos long before he submitted this Rule 60(b) motion.

Since it appears from Petitioner's submissions to the Court of Appeals that Petitioner was aware of the FBI Memos at the latest in May 2007, and possibly as early as September 2005, this Court concludes that Petitioner delayed his filing and the motion was not made within a "reasonable time."  Therefore, this Rule 60(b) motion is denied because it was filed in an untimely manner.

**B. The Merits**

Even if Petitioner's motion were filed in a timely manner, this Court would deny the motion on the merits.  A movant under Rule 60(b) must "show 'extraordinary circumstances' justifying reopening of the final judgment."  Gonzalez v. Crosby, 545 U.S. 524, 535 (2005) (quoting Ackermann v. United States, 340 U.S. 193, 199 (1950)).  "Such circumstances will rarely arise in the habeas context."  Id.

Petitioner fails to make any argument that might merit further review of the procedures of Petitioner's sentencing or the denial of his Section 2255 petition.  Petitioner's argument appears

---

[3] The Court of Appeals affirmed Judge Debevoise's denial of Manna's Rule 60(b) motion.  Manna v. United States, No. 06-4788, slip op. (3d Cir. June 28, 2007).

to be that he should have been afforded the opportunity to move for Judge Barry's recusal after she was allegedly informed of a plot to murder her.  Since Petitioner alleges that Judge Barry learned of the murder plot before his sentencing, he believes the procedures for both that proceeding and the review of his Section 2255 petition were tainted.[4]

Petitioner has offered little evidence to support his claim that Judge Barry received any information alleging Petitioner's involvement in the murder plot.  While the FBI Memos Petitioner provides here do discuss a murder plot against Judge Barry, they address a plot orchestrated by Manna.  The only discussion of Petitioner in the memoranda is as a co-defendant at trial and an individual whose communications should be monitored based solely on his connection to Manna.  (Pet'r's Br. Ex. B (Docket Entry No. 1-2 p. 38).)  Discussing the risk of the alleged threat, the FBI reported, "Manna's reputation and evidence presented at his trial indicate that he is more than capable of ordering the execution of others."  (Pet'r's Mot. Ex. B. p. 37.)  The FBI, in a separate memo, went on to discuss Manna's continued ability to utilize the Genovese organization for violent acts, noting, "Manna's incarceration should not be viewed as a barrier to any control he may have over other Genovese members or associates."  (Pet'r's Mot. Ex. B. p. 38.)  These documents demonstrate the FBI's singular interest in Manna as the source of the potential threat to Judge Barry, and do not support Petitioner's assertion that the FBI believed him to be part of the murder plot.

---

[4] Assuming, *arguendo*, that Judge Barry received information of the alleged murder plot by Manna, she would not have been required to recuse herself.  See United States v. Dalfonso, 707 F.2d 757, 761 (3d Cir. 1983) (recusal unnecessary where a third party, or even the accused, makes unsubstantiated claims of "improper inducement"); see also In re Basciano, 542 F.3d 950, 956 (2d Cir. 2008) ("Although a plot or threat, real or feigned, may create a situation in which a judge must recuse himself, recusal is not ordinarily or routinely required.").

The record fails to support any reasonable inference that Judge Barry was told about Petitioner being involved in the plot.  The memos simply report that "appropriate notifications" were made to Judge Barry.  (Pet'r's Mot. Ex. B. p. 38.)  Any number of notifications could have been appropriate, including a warning of generalized threats from prisoners.  Petitioner's inference that this language indicates Judge Barry was informed that Petitioner was part of a plot to kill her is baseless.

This Court finds that there is no basis to support Petitioner's claim that ex-parte communications between the FBI and Judge Barry tainted his sentencing and the review of his Section 2255 petition.  Petitioner has failed to state any "extraordinary circumstances" that would merit vacation of either his sentencing or Section 2255 proceedings.

### III. Conclusion

For the reasons set forth above, this Court finds that Petitioner's Rule 60(b) motion is untimely and, and even if it were timely, it is without merit.  Petitioner's motion is denied.

Dated: September 4, 2009

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

9